IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ALLISON AUSTIN,
    Plaintiff,

v.             No. 3:17-cv-00005-DRH-SCW

MARION COUNTY HOUSING
AUTHORITY, GEORGIA MILLER,
BRENDA LINGAFELTER, RICHARD
GREGG, GERTIE WALKER,
NANCY LACKEY, GARY PURCELL,
and PATRICK STEDELIN,
    Defendants.

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

Before the Court is defendants' motion to dismiss plaintiff's wrongful termination and defamation complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) (Doc. 7). Based on the following, defendant's motion to dismiss is **GRANTED**; all remaining state-law claims are **DISMISSED** for lack of subject matter jurisdiction.

### I. BACKGROUND

In January 2017, plaintiff Allison Austin ("Austin") filed a four-count complaint naming defendants and alleging various civil-rights and common law violations (Doc. 1). Austin alleged in January 2015, she entered into an employment contract ("Agreement") with defendants where it was agreed she would serve a three-year term as Executive Director of the Marion County Housing

Authority (*Id*. at 3; Doc. 16).  In December 2016, defendants advised she was being terminated "for cause" without providing notice or allegations of misconduct (Doc. 3.).

Austin claimed to remain in compliance with stipulations governing the Agreement, and did not act in any manner construed as a "grave misconduct," which—according to the Agreement (Doc. 16)—would solely justify termination "for cause" (*Id*. at 4).  Moreover, Austin contended defendants ignored repeated requests for an explanation about being fired (*Id*.), and further, damaged her reputation by disseminating news of her termination through local media outlets (*Id*. at 6, 9).  She asserted claims of deprivation of property interest and liberty interest without due process under the Fourteenth Amendment, breach of contract, and defamation.  For relief she requested damages and costs (Doc. 1).

In response, defendants filed a motion to dismiss for failure to state a claim and lack of subject matter jurisdiction over common law claims—assuming deprivation of property and liberty interest counts are initially dismissed (Doc. 7). Defendants argue, inter alia, Austin has no protectable property interest in employment because said interest was created and defined by terms of the Agreement (*Id.* at 2-3); and, no protectable liberty interest based on reputational loss due to her failure to demonstrate defendants caused her alleged defamation injury (Doc. 14).

In retort, Austin argues, among other things, state law governs whether she maintains a protectable property interest (Doc. 13 at 3); and, in Illinois, public

employees who are terminated "for cause" may not be terminated without due process (*Id.* at 4). Furthermore, she declares sufficient pleading of an occupational liberty claim due to defendant's alleged false and defamatory public statements (*Id.* at 8). In reply, defendants contend the occupational liberty claim must fail, as no legal basis to assert a violation of liberty interests exists under the facts of this case (Doc. 14).

## II. STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that Rule 12(6)(b) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." Notice pleading remains all that is required in a complaint, even though federal pleading standards were overhauled by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.' " *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citation omitted).

The Seventh Circuit offers further instruction on what a civil action must allege to endure 12(b)(6) dismissal. In *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008), the Court reiterated the standard: "surviving a Rule 12(b)(6)

motion requires more than labels and conclusions"; the complaint's allegations must "raise a right to relief above the speculative level." A plaintiff's claim "must be plausible on its face," that is, "the complaint must establish a non-negligible probability that the claim is valid." *Smith v. Med. Benefit Admin. Grp., Inc.*, 639 F.3d 277, 281 (7th Cir. 2011).

**B. Fed. R. Civ. P. 12(b)(1)**

Rule 12(b)(1) requires dismissal if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). When a defendant makes a 12(b)(1) challenge, the plaintiff bears the burden of establishing jurisdiction. *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc) (burden of proof 12(b)(1) issue is on party asserting jurisdiction). "[A] district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007). Yet, a court may receive and weigh evidence outside allegations in the complaint to determine if it has subject matter over the case. *See id.*

### III. ANALYSIS

Fundamentally, a question of law determines whether specific employment actions affecting public employees allude to constitutionally protected property interests. *See Cole v. Milwaukee Area Tech. Coll. Dist., 634 F.3d 901, 904 (7th Cir. 2011)*. "The Fourteenth Amendment's Due Process Clause does not itself create any property interests. It protects property interests that 'are created and

. . . defined by existing rules or understandings that stem from an independent source such as state law.' " *Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). An employee must present—not just an optimistic belief—but a legitimate, legal, and factual entitlement to employment to establish a discernible property right. *See Moore v. Muncie Police and Fire Merit Comm'n*, 312 F.3d 322, 326-27 (7th Cir. 2002) (stating employee has no property interest in prospective personnel matters).

## A. The "Agreement"

Austin's suit derives from an Agreement entered into with defendants where it was established she would serve a 3-year term—from January 5, 2015 to January 5, 2018—as the Executive Director of the Housing Authority of the County of Marion, Illinois.[1] As relevant, paragraph four of the Agreement stated:

> 4. <u>DISMISSAL.</u> Austin may be dismissed for cause. Termination for cause may occur for any actions the Board of Commissioners determines to be grave misconduct including, by way of example, but not to be limited to: disregard of reasonable and lawful direction of the Board of Commissioners, conviction of a felony, violation of federal, state or local laws or regulations, failure to perform job duties required of the position of Executive Director. Cause may also include Austin incurring disability to such an extent that Austin is no longer capable of performing the job as Executive Director for six (6) months out of any twelve (12) month period or obtaining eligibility for social security disability benefits.

(Doc. 16 at 2). Just as pertinent, paragraph six and seven of the Agreement provided the following stipulations for termination:

---

[1] *See* Doc. 16, Exhibit to Complaint.

> 6. TERMINATION.
> A.  The Board of Commissioners may terminate Austin for cause as set forth above [in paragraph four];
> B. The Board of Commissioners may terminate Austin for convenience upon 60 days notice to Austin.
> C.  Austin may terminate this Agreement by giving 120 days notice to Authority.
>
> 7. PAYMENT UPON TERMINATION.
> A. In the event Austin is terminated for cause, there shall be no termination benefit owed;
> B. In the event this Agreement is terminated for reasons other than for cause, there shall be a termination payment equivalent to two months of Austin's then current annual salary.  This payment shall be made within ninety (90) days of her termination;
> C. There shall be no further payment obligations except the accumulated payment obligations set forth in paragraph 3.

(*Id.*).

Defendants argue—pursuant to the Agreement—Austin's assertions of deprivation of property interest and liberty interest without due process should be dismissed under Rule 12(b)(6) because she maintained no protectable interests in her employment.  *See Cole*, 634 F.3d at 904 (in due process cases where deprivation is alleged threshold question is whether protected interest actually exists).  On the other hand, Austin contends she is entitled to due process, and Illinois state law governs whether she has a protectable interest in employment. *See Bishop v. Wood*, 426 U.S. 341, 344 (1976) (interest in employment can be created by implied contract; sufficiency of claim of entitlement must be decided by reference to state law).

**B. No Property Interest Established via "Agreement"**

To establish a protectable property interest, Austin "must be able to point to a substantive state-law predicate [which] create[es] that interest."[2] *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003) (citing *Roth*, 408 U.S. at 577); *see also Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 545 (7th Cir. 1998) (citing *Bishop*, 426 U.S. at 344 (property interest in employment can be created by contract)). Specifically, Austin is required to: (1) demonstrate terms of her employment contract permit termination "only 'for cause,' " *see id.* (citing *Farmer v. Lane*, 864 F.2d 473, 479-80 (7th Cir. 1988)), or if not, (2) make clear a "mutually explicit understanding[]" existed between herself and defendants, which reinforces her claim of entitlement to employment. *See Omosegbon*, 335 F.3d at 674; *see also Crim*, 147 F.3d at 545 (stating continued employment only constitutes as property under due process if there are rules or mutual understandings supporting entitlement claim). In other words, and in this case, Austin's property interest in continued employment is fashioned and delineated by terms of the Agreement. *See Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607-08 (7th Cir. 2014) (quoting *Covell v. Menkis*, 595 F.3d 673, 675-76 (7th Cir. 2010) (stating protected property interest in employment can arise from express or implied contract)).

Under Illinois law, in order to determine whether the Agreement permits termination "only for cause" the Court will initially look to the plain language of

---

[2] *See Swick v. City of Chi.*, 11 F.3d 85, 87-88 (7th Cir. 1993) (interest must be more than de minimis; plaintiff must prove form of pecuniary harm.)

the contract.  *See Wilson v. Career Educ. Corp.*, 729 F.3d 665, 671-72 (7th Cir. 2013) (Darrow, J., concurring) (citing *Thompson v. Gordon*, 241 Ill.2d 428, 948 N.E.2d 39, 47 (2011) (contract must be construed as whole viewing each provision in light of other provisions)).  Paragraph 4 of the Agreement unambiguously states *"Austin may be dismissed for cause."*  Likewise, subsection B is clear in stating *"[t]he Board of Commissioners may terminate Austin for convenience upon 60 days notice to Austin,"* and subsection C follows by declaring *"Austin may terminate this Agreement by giving 120 days notice to Authority."*  What is more, paragraph 7 subsection B unequivocally states "[***I]n the event this Agreement is terminated for reasons other than for cause****, there shall be a termination payment equivalent to two months of Austin's then current annual salary.  This payment shall be made within ninety (90) days of her termination.*"

The Court agrees with defendants in that "for cause" dismissal was merely one option the Board could utilize to effect termination.  No express or implied provision within the Agreement or alleged "mutually explicit understanding of continued employment" between parties indicates Austin can be terminated "only for cause."  *See Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013); *see also Garrido v. Cook Cnty. Sheriff's Merit Bd.*, 349 Ill.App.3d 68, 811 N.E.2d 312, 319 (2004) (public employees who can *only be terminated for cause* enjoy property interest in continued employment); *Prato v. Vallas*, 331 Ill.App.3d

852, 771 N.E.2d 1053, 1064 (2002) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-41 (1985)).

Haphazardly, Austin cites to *Ricker v. Fulton Cty. Soil & Water Conservation Dist.*, 800 F. Supp. 636, 639 (C.D. Ill. 1992), in an effort to propose all employment contracts for fixed terms are terminable only for cause. However—along with being non-controlling case law—this argument fails because in *Ricker*, plaintiff could autonomously terminate a fixed one-year term by giving 30-days written notice to employer; or, the employer could terminate plaintiff—under terms of a separate third-party agreement—upon 30-days written notice to employee; or, plaintiff could be terminated for inadequate funding of plaintiff's position; *at least one of which condition was needed* to terminate the contracted employee. *See id.* at 639-40 (contract did not provide for right of termination for any reason whatsoever). Unlike the instant matter, the contract in *Ricker* was not terminable at will, and "[p]laintiff's discharge prior to the expiration of the one year period could have only been for cause." *Id.* at 640.

Further, Austin attempts to rely on *Hostrop v. Bd. of Junior Coll. Dist. No. 515*, 471 F.2d 488, 494 (7th Cir. 1972) for the proposition that *any* term of employment set by contract is a property interest. To the contrary, the *Hostrop* plaintiff previously possessed a legitimate claim of entitlement to his position at the time of termination, see *id.* (stating defendants agreed to employ plaintiff for fixed period of time under terms of employment contract), and was discharged in a retaliatory fashion. *See id.* at 493 (plaintiff public-employee alleged termination

was retaliatory act; plaintiff was entitled to protection from retaliation by employer thus triggering substantive due process). To come to this conclusion, the *Hostrop* court relied on *Perry v. Sindermann*, 408 U.S. 93, 601 (1972), which concerned allegations of existing unwritten rules, understandings, policies, and practices by an employer giving rise to justification of a legitimate claim to continued employment. *See id*. at 601-03. *Hostrop* is distinguishable from the instant matter because, here, Austin has not alleged her termination was a retaliatory act, and she cannot point to rules or a mutually explicit understanding within the Agreement supporting a claim of entitlement to continued employment. *See Omosegbon*, 335 F.3d at 674.

Accordingly, Count I—Deprivation of Property Interest Without Due Process of the Law—is **DISMISSED** for failure state a claim for which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

**C. No Liberty Interest Established**

Next, Defendants move to dismiss Count II pursuant to Rule 12(b)(6). As an initial matter, the Court will look to whether Austin adequately alleged a protected liberty interest. Count II of the complaint states after being terminated, defendants publicly disseminated news Austin was fired "for cause"; and, the broadcast of news compromised and damaged her good name, reputation, honor, and integrity. As a result, Austin argues defendants deprived her of a liberty interest in employment without protections of due process guaranteed under the Fourteenth Amendment.

Conspicuously, the law is unequivocal in identifying Austin has no cognizable liberty interest in her reputation. *See Paul v. Davis*, 424 U.S. 693, 712 (1976); *Mann v. Vogel*, 707 F.3d 872, 878 (when state actor makes allegations that damage reputation no federally protected liberty interest is implicated); *see also O'Gorman v. City of Chi.*, 777 F.3d 885, 891 (7th Cir. 2015) (mere defamation by government does not deprive liberty protected by Fourteenth Amendment even when causing serious impairment of one's future employment); *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (explaining when state actor makes allegations that only damage reputation no federally protected liberty interest is implicated).

On the other hand, when the government generates doubt regarding an employee's good name, reputation, honor or integrity in a way that makes it effectively impossible for the employee to find a new job in their chosen field, "the government has infringed upon that individual's 'liberty interest to pursue the occupation of [their] choice.'" *See Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015) (quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001)). Stated differently, two types of situations threaten an employee's liberty interest when the government effects termination: (1) when the employee's good name, reputation, honor or integrity is at risk by accusations of "immorality, dishonesty, alcoholism, disloyalty, Communism or subversive acts"; or (2) the government inflicts "stigma or other disability on the [employee] which forecloses other [employment]

opportunities."³ *See Townsend*, 256 F.3d at 669 (quoting *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985)).

i."Stigma-Plus" Analysis

Thus, to invoke due process safeguards under the "stigma-plus" analysis,⁴ Austin must make evident: (1) an alteration in legal status, such as governmental deprivation of previously held right, combined with, (2) an injury resulting from defamation. *See Paul*, 424 U.S. at 798-09; *Mann,* 707 F.3d at 878 (citing *Doyle v. Camelot Care Ctr., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002)). Austin's termination from the position of Executive Director satisfies the alteration of legal status prong. *See Townsend*, 256 F.3d at 669 (explaining loss of employment qualifies as alteration of legal status). It is understandable that "[a]ny time an employee is involuntarily terminated, some stigma attaches"; but this type of stigma does not interfere with liberty interests. *See Ratliff v. City of Milwaukee*, 795 F.2d 612, 625 (7th Cir. 1986). Consequently, to show defendants interfered with a liberty interest in pursuit of an occupation, Austin must demonstrate: "(1) [she was] stigmatized by the [defendants] actions; (2) the stigmatizing information [was] publicly disclosed; and (3) [she] suffer[ed] a tangible loss of other employment opportunities as a result of the public disclosure." *Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 801 (7th Cir. 2000). Put another way, Austin's

---

³ An employer's characterization of an employee as incompetent or unable to perform job tasks to standard does not infringe on liberty interests. *See Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348 (7th Cir. 1995).

⁴ *See Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015) (citing to *Somerset House, Inc. Turnrock*, 900 F.2d 1012, 1015 (7th 1990) (under "stigma plus" analysis injury to reputation along with change in legal status constitutes deprivation of right)).

"good name, reputation, honor, or integrity must be called into question in such a way as to make it virtually impossible for the employee to find new employment in [her] chosen field." *Id.*

ii. Existence of Qualified Privilege

Defendants contend Austin's allegations do not give rise to deprivation of a protectable liberty interest. This is because Austin's grounds for alleging public disclosure of stigmatizing and defamatory information were presented via email provided to a local newspaper pursuant to a Freedom of Information Act ("FOIA") request. Defendants further argue a qualified privilege exists, and Count II should be dismissed pursuant to Rule 12(b)(6) because Austin has no legal basis to dispute her liberty interest was violated.[5]

Under Illinois law, defamatory statements are not actionable if privileged, *see Pompa,* at ¶ 26, and the presence or absence of privilege is a question of law. *See Naleway v. Agnich*, 386 Ill.App.3d 635, 897 N.E.2d 902, 909 (2008). Qualified or conditional privileges can only be overcome in situations where a defendant makes false statements with intent to stigmatize, or with reckless disregard for the truth. *See Neuros Co., Ltd. v. KTurbo, Inc.*, 698 F.3d 514, 519 (7th Cir. 2012); *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 536 (7th Cir. 2009) (citing *Kuwik v. Starmark Star Mktg. and Admin., Inc.*, 156 Ill.2d 619 N.E.2d 129, 133 (1993), and explaining communications can still be defamatory and actionable only if privilege was

---
[5] *See Pompa v. Swanson*, 2013 IL App (2d) 120911, ¶ 27 (qualified privilege protects normally defamatory and actionable communications in order to effect policy of protecting honest communication of misinformation in certain favored circumstances and to facilitate availability of correct information).

abused). "To determine if a qualified privilege exists, a court looks only to the occasion itself for the communication and determines as a matter of law and general policy whether the occasion created some recognized duty or interest to make the communication so as to make it privileged." *Pompa*, at ¶ 27.

The question now is whether a qualified privilege existed for FOIA-requested information printed in a local newspaper regarding Austin's termination. The Court has determined that a qualified privilege *does in fact exist*. "Simply stated, the purpose of FOIA 'is to open governmental records to the light of public scrutiny.' " *Stern v. Wheaton-Warrenville Cmty. Unit Sch. Dist. 200*, 233 Ill.2d 396, 910 N.E.2d 85, 91 (2009). Section 3(a) of Illinois' FOIA states "[e]ach public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Sections 7 and 8.5 of this Act." 5 ILCS 140/3(a). Public records are defined as:

> [A]ll records, forms, writings, letters, memoranda, books, papers, maps, photographs, microfilms, cards, tapes, recordings, electronic data processing records, electronic communications, recorded information and all other documentary material pertaining to the transaction of public business, regardless of physical form or characteristics, having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body.

5 ILCS 140/2(c). The FOIA information requested by the local newspaper regarding Austin's termination does not fit any of the exceptions in Sections 7 or 8.5. *See Ill. Educ. Ass'n v. Ill. State Bd. of Educ.*, 204 Ill.2d 456, 791 N.E.2d 522, 527 (2003) (stating exceptions to disclosure set forth in Act are to be read narrowly).

It is undisputed that defendants complied with Illinois law in producing FOIA information requested by the local newspaper. Under these circumstances Austin lacks a legitimate basis for satisfying the "stigma-plus" standard because she cannot allege prong 2 of the analysis—that defendants' conduct caused an injury to her reputation. *See Hinkle*, 793 F.3d at 768. Accordingly, Count II—Deprivation of Liberty Interest Without Due Process of the Law—is **DISMISSED** for failure state a claim for which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

Austin's remaining state-law claims—Count III: Breach of Contract and Count IV: Defamation—are **DISMISSED** for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### III. CONCLUSION

Based on the foregoing, defendants' motion to dismiss (Doc. 7) is **GRANTED** pursuant to Rule 12(b)(6) as to Counts I and II; Rule 12(b)(1) as to Counts III and IV. As a consequence, Counts I and II are **DISMISSED WITH PREJUDICE**; Counts III and IV are **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court is directed to enter judgment and close the file.

**IT IS SO ORDERED**.
Signed this 12th day of June, 2017.

Judge Herndon
2017.06.12
17:04:22 -05'00'

**UNITED STATES DISTRICT JUDGE**